United States District Court
Southern District of Texas
**ENTERED**
May 27, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| IN RE SEALED SEARCH WARRANT APPLICATION | § § § § § § | CIVIL ACTION NO. 3:25-mc-05067 |

## OPINION AND ORDER

An administrative inspection warrant traditionally allows a federal regulatory agency to gain entry to a business to inspect records or to search for safety hazards and regulatory violations. Here, the United States of America (the "Government") seeks an administrative inspection warrant—not to examine documents or inspect for hazards—but for U.S. Immigration and Customs Enforcement ("ICE") agents to enter a specific private business located within this district to search for and seize individuals who might be in the United States unlawfully, and to investigate a pattern or practice of employing unauthorized aliens. *See* App. at 1.[1]

Although the Government bills this search as civil, it is inherently criminal because the owner(s) of the target business face criminal penalties for employing aliens without work authorization. *See* 8 U.S.C. § 1324a(f)(1). Moreover, the vehicle for obtaining a warrant to search for a person—an alien is a person—is Federal Rule of Criminal Procedure 41(d)(1), not an administrative warrant. Lastly, despite identifying specific individuals that the Government has probable cause to believe are in the United States without legal authorization, the Government's proposed warrant is styled as an impermissible, non-particularized general warrant. For all these reasons, I deny the Government's application for an administrative inspection warrant.

---

[1] The application and all supporting materials, including the Government's memorandum of law and affidavits, involve an ongoing investigation and are thus filed under seal.

## THE WARRANT APPLICATION

The Government seeks an administrative warrant authorizing ICE agents to enter "[a]reas of [a specific business located within this district] where aliens may likely be found, including but not limited to, the search of any locked rooms on the premises in order to locate aliens, without legal authority, in the United States." Warrant at 1. As explained by the Government in a memorandum of law filed concurrently with its warrant application: "ICE seeks to enter those premises to search for persons believed to be aliens in the United States without legal authority, *and to take such actions, with respect to those aliens, as are authorized by the [Immigration and Nationality Act (the 'Act')]*." Memo at 1 (emphasis added).

Importantly, the Act gives an ICE agent the authority, *without a warrant*, to: (1) "interrogate any alien or person believed to be an alien"; and (2) "arrest any alien . . . if he has reason to believe that the alien . . . is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(1), (a)(2). Thus, in practicality, the Government seeks an administrative warrant to permit its agents to enter and search a private business to which they would otherwise be denied access so that they may exercise their warrantless arrest powers in furtherance of a criminal investigation into the unlawful employment of unauthorized aliens.

The Government claims to derive its power to conduct such a search not from Rule 41(d)(1)—which requires "probable cause to search for and seize a person"—but from its general powers to question suspected aliens and enforce the immigration laws. *See* 8 U.S.C. §§ 1357, 1324a(f). Contrary to the Government's assertions otherwise, an administrative warrant is not the proper vehicle for a criminal search and seizure.

## A BRIEF HISTORY OF ADMINISTRATIVE WARRANTS

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "The Constitution prescribes, in other words, that where the matter is of such a nature as to require a judicial warrant, it is also of such a nature as to require probable cause." *Griffin v. Wisconsin*, 483 U.S. 868, 877 (1987). The United States Supreme Court has "arguably come to permit an exception to that prescription for administrative search warrants." *Id.* The Supreme Court has held that a federal regulatory agency may apply for a warrant to execute a statutory grant of inspection authority. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 325 & n.23 (1978) (holding warrantless inspections under the Occupational Safety and Health Act unconstitutional, but concluding that "there would be no occasion for enjoining the inspections authorized" by the statute if the agency obtained a warrant). In *Marshall*, the Supreme Court stated that "[p]robable cause in the criminal law sense is not required" to obtain an administrative warrant. *Id.* at 320. The high court held that "a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'" *Id.* (quoting *Camara v. Mun. Ct. of San Francisco*, 387 U.S. 523, 538 (1967)). Notably, the warrant contemplated in *Marshall* did not involve the potential seizure or criminal liability of any person.

Two federal courts of appeals (arguably three) have extended *Marshall* to federal immigration agents, acting under administrative inspection warrants, to search businesses for unauthorized aliens and to seize any such persons found, as a part of the agents' efforts to enforce the immigration laws. *See Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1222 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 940 (1982); *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 553 (9th Cir. 1986); *Ramirez v. Webb*, 835 F.2d 1153, 1158 (6th Cir.

1987).² Such warrants are commonly referred to as "*Blackie's* warrants," named after the 1981 D.C. Circuit decision that first permitted such a warrant. The Government encourages me to follow *Blackie's* holding. I cannot do that because, even if *Blackie's* was correctly decided in 1981 (which I do not believe to be the case), the D.C. Circuit's reasoning in *Blackie's* was based on facts that, while true in 1981, are simply not true now.

In *Blackie's*, the D.C. Circuit reasoned that the warrant requested by the Immigration and Naturalization Service ("INS")—the predecessor to ICE—"was not analogous to a criminal investigation" because "[t]here are no sanctions of any kind, criminal or otherwise, imposed by law upon a knowing employer of illegal aliens." *Blackie's*, 659 F.2d at 1218. That was true in 1981. It was also true in 1984 when the Supreme Court held that INS agents did not seize anyone during a "factory survey" simply because they were stationed at the factory exits, or because they questioned individual workers. *See I.N.S. v. Delgado*, 466 U.S. 210, 240 (1984) (Brennan, J., concurring in part and dissenting in part) ("Furthermore, the Act expressly exempts American businesses that employ undocumented aliens from all criminal sanctions."). And it was true on September 11, 1986, when the Ninth Circuit issued its decision in *Nelson*. *See* 799 F.2d at 552 ("A showing less than that required for criminal warrants was deemed appropriate [in *Blackie's*] because . . . INS activities are 'not analogous to a criminal investigation' where

---

² *Ramirez* is not a particularly helpful case in addressing whether an administrative warrant should be available to ICE agents searching for unauthorized aliens and investigating criminal violations of the immigration laws. The *Ramirez* court was not tasked with assessing the legality of the warrants at issue, and it was undisputed that there was "probable cause for obtaining the warrants." 835 F.2d at 1155. Rather, *Ramirez* concerned whether "a constitutional or statutory right clearly established at the time of the issuance and execution of the warrants [in 1980] was violated by the failure to particularly describe in the warrant the persons to be searched for." 835 F.2d at 1158. The Sixth Circuit held that "defendants [were] entitled to summary judgement on the grounds of qualified immunity on this issue" because "the law was not clear in 1980 and is not clear now as to whether an INS warrant to search for undocumented aliens . . . must identify the aliens by name or description." *Id.* at 1157–58.

the *employer* faces 'no sanctions of any kind' for employing illegal aliens." (quoting *Blackie's*, 659 F.2d at 1218)).

But in November 1986, President Ronald Reagan signed into law the Immigration Reform and Control Act of 1986 that, among other things, introduced civil *and* criminal penalties to employers who knowingly hired undocumented immigrants or other individuals not authorized to work in the United States. *See* Immigration Reform and Control Act of 1986, Pub. L. No. 99–603, § 101(f)(1), 100 Stat 3359 (1986). Thus, *Blackie's* warrants issued after 1986 would, on "[a] showing less than that required for criminal warrants," authorize the search of private property where the business owner potentially faces criminal penalties. *Nelson*, 799 F.2d at 552. That simply cannot be right.

## ADMINISTRATIVE WARRANTS CANNOT BE USED TO SEARCH FOR PEOPLE OR INVESTIGATE CRIMINAL VIOLATIONS

*Blackie's* inferred from the Act "some predicate power to obtain search warrants in aid of the enforcement activities specifically delineated in the statute, although the statute does not explicitly authorize such warrants." 659 F.2d at 1222. After *Blackie's* was decided, the Supreme Court clarified that "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). The Supreme Court then later explained that "when a rule of criminal procedure addresses a particular issue, it 'provides the applicable law' and displaces the residual authority of the All Writs Act." *United States v. Kone*, 591 F. Supp. 2d 593, 607–08 (S.D.N.Y. 2008) (quoting *Carlisle v. United States*, 517 U.S. 416, 429 (1996)). Thus, the particular issue here is addressed, not by the Act, but by Rule 41(d)(1), which provides the procedure for obtaining a warrant "to search for and seize a person."

Because the Act does not authorize warrants, it is clear that Rule 41(d)(1) is the source of authority for searching for an alien, who is also a person.[3] That Rule 41(d)(1) is the proper vehicle for searching for and seizing aliens is solidified by the following comment to the 1979 amendments:

> This part of the amendment to Rule 41 covers . . . *the arrest of a deportable alien* under 8 U.S.C. § 1252, *whose presence at a certain place might be important evidence of criminal conduct by another person*, such as the harboring of undocumented aliens under 8 U.S.C. § 1324(a)(3).

Fed. R. Crim. P. 41 advisory committee's note to 1979 amendment (emphasis added).[4] Thus, I see no need to rely on questionable, non-precedential authority to issue an administrative warrant to search for people and investigate a potential crime when the Government has a perfectly adequate vehicle to do both of those things in the form of a Rule 41 warrant.

One district court from outside of the Fifth Circuit that refused to follow *Blackie's* more than 40 years ago put it best:

> [A]dministrative warrants may not be used by INS to justify the seizure of persons. Assuming arguendo that *Blackie's* was correctly decided and that INS may utilize an administrative warrant to enter and search a given commercial location, such a warrant does not authorize the search or seizure of persons found on the premises. Warrants to search premises simply do not authorize the seizure of persons found on the premises. *See Steagald v. United States*, 451 U.S. 204 (1981) (Warrants to search are issued for different reasons

---

[3] One of the many reasons I feel no compulsion to follow *Blackie's* is that the D.C. Circuit passed on deciding "whether Rule 41 allows the issuance of warrants to search for persons." 659 F.2d at 1228. Yet, in plain language, Rule 41 unquestionably authorizes warrants "to search for and seize a person." Fed. R. Crim. P. 41(d)(1). The *Blackie's* court also held that a search warrant to assist immigration officials in their enforcement activities "was improperly premised on Rule 41, which authorizes magistrates to issue warrants in aid of criminal investigations." 659 F.2d at 1228. As discussed above, this is inherently a criminal investigation. *See* Memo at 4 ("Congress provided Federal District Courts with direct jurisdiction under 8 U.S.C. § 1324a(f) with a *criminal provision* for a pattern or practice of knowingly hiring or continuing to employ aliens not authorized to work in the United States." (emphasis added)). Accordingly, *Blackie's* is inapposite here.

[4] For whatever reason, neither the *Blackie's* court nor the *Nelson* court acknowledged or discussed this note to Rule 41.

and to serve different interests than warrants to arrest persons.). The [Supreme] Court has stated that administrative warrants authorize the search only of "commercial property," *see Donovan v. Dewey*, 452 U.S. 594 (1981), or for inspection of property, *see Camara*, 387 U.S. at 534–39. The [Supreme] Court has never held that an individual may be searched or seized on anything less than reasonable suspicion that he is engaged in criminal activity. *See Michigan v. Summers*, 452 U.S. 692 (1981); *United States v. Cortez*, 449 U.S. 411, 417–18 (1981); *Reid v. Georgia*, 448 U.S. 438 (1980). Thus, assuming without deciding that INS may utilize administrative warrants to search commercial premises, it may not use such warrants to search or seize individuals found on the premises.

*Ill. Migrant Council v. Pilliod*, 531 F. Supp. 1011, 1020–21 (N.D. Ill. 1982) (cleaned up). People are not documents or safety hazards. If the Government wants to search for a person—including an alien—it must get a Rule 41 warrant.

What is interesting about the Government's request here is that it seeks an administrative warrant, despite arguably having provided probable cause for a Rule 41 warrant as to several suspected aliens and the target employer. Perhaps the Government thinks that, with an administrative warrant, it can get around the particularity requirements of a Rule 41 warrant. It cannot.

### THE GOVERNMENT SEEKS A GENERAL WARRANT

Despite identifying specific employees that it has reason to believe are using Permanent Resident cards and Social Security numbers that do not correspond to the employee presenting them,[5] the Government seeks a warrant that would authorize it to search anywhere in the target business, including "locked rooms" to locate not just those specific employees, but *anyone* its agents believe may be an unauthorized alien. Warrant at 1. The law has never permitted such a warrant.

---

[5] These facts alone may constitute probable cause to issue arrest warrants for these individuals. *See United States v. Agriprocessors, Inc.*, No. 08-cr-1324, 2009 WL 2255729, at *2 (N.D. Iowa July 28, 2009) (finding probable cause to issue arrest warrants for a business's employees who, "among other things, used . . . the social security number of another person"). But presenting probable cause to arrest a specific individual does not translate into probable cause to search a business anywhere for any person who might be an unauthorized alien—especially not when such a search may subject the employer to criminal sanctions and the unauthorized alien to arrest.

Just last year, the Fifth Circuit held that geofence warrants are per se "unconstitutional under the Fourth Amendment." *United States v. Smith*, 110 F.4th 817, 820 (5th Cir. 2024). In reaching that conclusion, the Fifth Circuit explained that the Fourth Amendment was adopted in "response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Id.* at 836 (quoting *Riley v. California*, 573 U.S. 373, 403 (2014)). "'General warrants' are warrants that 'specif[y] only an offense,' leaving 'to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched.'" *Smith*, 110 F.4th at 836 (quoting *Steagald*, 451 U.S. at 220). It is an elementary proposition that "no warrant can authorize the search of everything or everyone in sight." *Smith*, 110 F.4th at 836 (quotation omitted). Yet that is exactly what the Government seeks here—an open-ended warrant for the express purpose of conducting dragnet searches and seizures. Such a request is emblematic of general warrants, and "present[s] the exact sort of 'general, exploratory rummaging' that the Fourth Amendment was designed to prevent." *Id.* at 837 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).

Although I appreciate the Government's duty to fight illegal immigration, I "cannot forgive the requirements of the Fourth Amendment in the name of law enforcement." *Berger v. New York*, 388 U.S. 41, 62 (1967). In his concurrence in *Smith*, Judge James Ho explained that even though the Fifth Circuit's decision

> will inevitably hamper legitimate law enforcement interests . . . [,] hamstringing the government is the whole point of our Constitution. Our Founders recognized that the government will not always be comprised of publicly-spirited officers—and that even good faith actors can be overcome by the zealous pursuit of legitimate public interests.

*Smith*, 110 F.4th at 841 (Ho, J., concurring). The same analysis applies to the present situation. To uphold the United States Constitution, I must deny the Government's application for an unrestrained administrative inspection warrant.

Because the Government has specifically requested only an administrative inspection warrant, and because the warrant is not particularized, I am unwilling to grant the Government's application.[6]

SIGNED this 27th day of May 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[6] My decision, although unreviewable by the district court, does not prevent the Government from reapplying for another warrant. *See In re Anthony Marano Co.*, 647 F. Supp. 3d 643, 650 (N.D. Ill. 2022) ("Section 636(a)(1) does not provide for district court review of magistrate judges' orders entered under their Section 636(a)(1) jurisdiction."); *United States v. Maresca*, 266 F. 713, 724 (S.D.N.Y. 1920) (Having found the district court "not entitled to review" the ruling of a commissioner (the predecessor to the modern federal magistrate judge) as to a warrant, the court observed that such rulings are "not res adjudicata" and that "[a]nother warrant might be applied for.").